UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60424-CIV-DIMITROULEAS

LARRY SCIROTTO,

    Plaintiff,

vs.

CITY OF FORT LAUDERDALE d/b/a
FORT LAUDERDALE
POLICE DEPARTMENT,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, LARRY SCIROTTO ("Plaintiff" and/or "Mr. Scirotto"), pursuant to Local Rule 7.1(c), files this response in opposition to Defendant's, CITY OF FORT LAUDERDALE d/b/a FORT LAUDERDALE POLICE DEPARTMENT ("Defendant" and/or "CITY"), Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (D.E. 20), and in support thereof states as follows:

**I.   INTRODUCTION**

This action arises out of CITY's breach of contract and wrongful termination of Mr. Scirotto's employment as Chief of Police of the Fort Lauderdale Police Department ("FLPD"). As Chief of Police, Mr. Scirotto was tasked with promoting and establishing greater diversity within the FLPD, as cited publicly by several CITY employees and representatives. (D.E. 18 ¶¶ 1, 30, 33, 36, 39, 40, 44, 50, 69). Despite complying with CITY's objective to increase diversity

1

among FLPD's workforce in a fair, equitable and legally compliant manner, CITY wrongfully terminated Mr. Scirotto's employment with Defendant. (D.E. 18 at ¶¶ 1, 13, 71, 73, 97, 134).

Notwithstanding, Mr. Scirotto has sufficiently plead CITY's violation of Title VI of the Civil Rights Act, which is codified at 42 U.S.C. § 2000d et seq. ("Title VI"). Additionally, Mr. Scirotto and Defendant entered into a validly enforceable contract for employment, which Defendant breached, and Defendant is not immune from Mr. Scirotto's defamation claim. Accordingly, Defendant's Motion to Dismiss Mr. Scirotto's Amended Complaint and Incorporated Memorandum of Law ("Motion to Dismiss") (D.E. 20) must be denied.

## II.  BACKGROUND

In the early months of 2021, CITY and FLPD began a search to hire a new Chief of Police. (D.E. 18 at ¶ 19). On or about April 26, 2021, Mr. Scirotto commenced candidate interviews for the role and position of FLPD's Chief of Police. (D.E. 18 at ¶¶ 24-50). During the interview process discussion, several CITY employees and officials advised Mr. Scirotto that the Chief of Police's duties include creating a diverse organization. *Id. See e.g.* (D.E. 18 ¶¶ 25, 41, 45-46). A majority of Mr. Scirotto's interview process focused primarily on the diversity of employees within FLPD including extensive discussion about increasing diversity among FLPD's workforce. *Id.* These same CITY officials assured Mr. Scirotto of their unwavering support for Mr. Scirotto's plans to build a diverse workforce within FLPD. *Id.*

On or about June 25, 2021, Mr. Lagerbloom provided Mr. Scirotto with a formal written Offer of Employment as Chief of Police for the CITY, which Mr. Scirotto accepted. (D.E. 18 at ¶ 51 and Exhibit A). During his tenure as Chief of Police, Mr. Scirotto promoted fifteen (15) FLPD employees of various genders and races selected from a pool of qualified candidates. (D.E. 18 at ¶ 57). Although nine (9) of the fifteen (15) employees promoted were white males, Mr. Scirotto

received significant opposition from FLPD employees demanding that Mr. Scirotto promote an even greater number of white employees. (D.E. 18 at ¶ 59). On October 11, 2021, CITY employees informed Mr. Scirotto that there was an Equal Employment Opportunity Commission ("EEOC") complaint filed against him for alleged discriminatory promotion practices. (D.E. 18 at ¶ 60). CITY's employees determined that Mr. Scirotto's promotional practices were appropriate. (D.E. 18 at ¶ 62). Notwithstanding, on or around November 22, 2022, CITY entered into an agreement with Gregg Rossman, Esq. of Rossman Legal ("Mr. Rossman") to investigate "various complaints and allegations of workplace discrimination at [FLPD]" related to employee promotions. (D.E. 18 at ¶ 64-66). Generally, Mr. Rossman's Investigative Report dated February 25, 2022 concluded that "there is a very divisive atmosphere within [FLPD] based on the perception [Mr. Scirotto] is intentionally using race, gender and sexual orientation as attributes necessary for promotions." (D.E. 18 at ¶ 66 and Exhibit B). On March 5, 2022, CITY terminated Mr. Scirotto from his position as Chief of Police and his employment with FLPD based on the findings contained in the Investigative Report. (D.E. 18 at ¶ 71-73). Despite his previously untarnished service as a head of law enforcement and city official, Mr. Scirotto has been deprived of due process and has instead been judged in the court of public opinion without any meaningful opportunity to defend himself. (D.E. 18 at ¶ 90). In addition to the Investigative Report, CITY's Auditor, John Herbst ("Mr. Herbst"), a CITY employee at all material times, made defamatory and false statements that were outside the scope of his authorized duties. (D.E. 18 at ¶ 81). Mr. Herbst knowingly made false and defamatory statements publicly, purportedly on behalf of the CITY, which were also published, whereby Mr. Herbst falsely accused Mr. Scirotto of violating CITY policy and stealing from CITY by purportedly working NCAA

sporting events on the same days he was scheduled to work at FLPD, which also attributed to the CITY's decision to terminate Mr. Scirotto. (D.E 18 at ¶ 83, 86).

Mr. Scirotto brings multiple claims based on these facts, including: Claim for Breach of Contract (Count I); Defamation (Count II); and Violation of Title VI of the Civil Rights Act, which is codified at 42 U.S.C. § 2000d et seq. ("Title VI") (Count III).

### III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, it need only contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). The purpose of this pleading requirement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In this case, as will be further discussed below, Mr. Scirotto has pled all of the facts necessary to proceed on its claims. Thus, Defendant's Motion to Dismiss must be denied.

### IV. ARGUMENT

#### A. Plaintiff has Claim for Breach of Contract.

While Florida Courts have held that a claim for breach of contract may not be maintained for breach of an employment contract terminable "at-will," the Legislature may carve out exceptions to the at-will doctrine. *Bryant v. Shands Teaching Hospital & Clinics, Inc.*, 479 So. 2d

165, 167, 1985 Fla. App. LEXIS 5932, *7, 10 Fla. L. Weekly 2565 *citing Smith v. Piezo Technology & Professional Administrators*, 427 So.2d 182 (Fla. 1983). "An at will employee may be discharged at any time, ***as long as she is not terminated for a reason prohibited by law, such as retaliation or unlawful discrimination.*** " *Laguerre v. Palm Beach Newspapers, Inc.*, 20 So. 3d 392, 395 (Fla. 4th DCA 2009) *citing Leonardi v. City of Hollywood*, 715 So. 2d 1007 (Fla. 4th DCA 1998)(emphasis added); *Davidson v. Iona-McGregor Fire Prot. & Rescue Dist.*, 674 So. 2d 858, 861 (Fla. 2d DCA 1996)(stating that "[t]he general rule of at-will employment is that an employee can be discharged, as long as he is not terminated for a reason prohibited by law.").

Defendant alleges that "[n]one of the cases Plaintiff cites support the proposition that a breach of contract claim will lie where there is an at-will employment agreement." (D.E. 20 at pg. 4). Notwithstanding, the Court in *Laguerre* merely found that the exception for termination of an "at -will" employee for reasons prohibited by law was not applicable because the underlying law, which plaintiff contends the defendant violated, did not apply to the case. *Laguerre* 20 So. 3d at 395, n.2. In contrast, Plaintiff sufficiently pleads Defendant's violation of Title VI, which is applicable to the case at hand. *See Infra*. IV.C.

Similarly, Defendant misconstrues the Court's holding in *Leonardi* as the Court did not hold that "reliance on a promise consisted of at-will employment is unreasonable as a matter of law as such a promise created no enforceable right on a claim for promissory estoppel." (D.E. 20 at pg. 4). Instead, this excerpt was taken from the Court referencing competing case law in several different jurisdictions. *Leonardi* 715 So. 2d at 1010. At the conclusion, the Court found that the plaintiff could not maintain a claim for promissory estoppel – not breach of contract – based on its analysis under the doctrine of promissory estoppel, not because the plaintiff was an at-will employee. *Id*.

Furthermore, Defendant cites to an inapplicable case *Bruley v. Vill. Green Mgmt. Co.*, 592 F. Supp. 2d 1381, 1385 (M.D. Fla. 2008) to support its position. However, Defendant splices together two unrelated portions of holdings made by the Court in *Bruley* to construct the holding Defendant relies on. (D.E. 20 at pg. 4). The Court in Bruley held as follows:

> "'Florida law ... provides no action for the common law tort of wrongful termination.' *Rosensweig v. Morgan Stanley & Co., Inc.,* 494 F.3d 1328, 1335 (11th Cir.2007). Contrary to Bruley's arguments, Florida has no exception even where termination is founded on an employee's exercise of constitutional rights." *Bruley,* 592 F. Supp. 2d at 1385 (M.D. Fla. 2008); and

> "Thus, to bring a non-contract claim for wrongful discharge in Florida, an employee must rely on statutory causes of action created by the Legislature." *Bruley,* 592 F. Supp. 2d at 1385 (M.D. Fla. 2008).

Based on the foregoing, Defendant's reliance on *Bruley* is improper as Plaintiff's Amended Complaint alleges a breach of contract claim for violation of Title VI rather than a common law tort of wrongful termination and/or non-contract claim for wrongful discharge.

Again, Defendant conflates the holding in *Yarcheski v. Keiser Sch., Inc.*, 508 F. App'x 916 (11 Cir. 2013) to assert that a cause of action for breach of an at-will employment agreement would not lie in a breach of contract claim. (D.E. 20 at pg. 4). The plaintiff's allegation for breach of contract was separate and apart from the plaintiff's claim for breach of Florida's Private Whistleblower Act. *Id.* at 917-918. The Court in *Yarcheski* did not make a finding that a breach of contract claim of at-will employment agreement may not be based on the exception to at-will employment agreements – termination for reasons prohibited by law. *Id.*[1]

Accordingly, Defendant fails to cite to any authority that does not permit Plaintiff to bring a breach of contract claim for breach of an at-will employment agreement for being terminated

---

[1] For similar reasons, Defendant's reliance on *Kefeenie v. Gloria Martin Trust*, 2018 U.S. Dist. LEXIS 153706, *13, 2018 WL 4301558 is misguided and not applicable.

for a reason prohibited by law. In fact, the general rule of at-will employment is that an employee can be discharged, as long as he is not terminated for a reason prohibited by law. See *Davidson* 674 So. 2d at 861.

In the case at hand, Mr. Scirotto was terminated for a reason prohibited by law, specifically, under Title VI. *See Infra*. IV.C. It is well-settled that Title VI supports retaliation claims. S*ee, e.g., Peters v. Jenney*, 327 F.3d 307, 318 (4th Cir. 2003); *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 83 (D.D.C. 2003); *Gutierrez v. Wash. Dep't of Soc. & Health Servs.*, CV-04-3004-RHW, 2005 WL 2346956, at *5 (E.D. Wash. Sept. 26, 2005). Even if this Court determines that Mr. Scirotto's employment with CITY was "at-will," CITY breached its employment contract because CITY terminated Mr. Scirotto's in violation of Title VI, which is an act of retaliation and intentional discrimination. Mr. Scirotto objected to CITY's discriminatory promotional practices by promoting six (6) minority FLPD employees. (D.E. 18 at ¶ 136). Thereafter, CITY took significant adverse actions against Mr. Scirotto by launching an unwarranted and retaliatory investigation against him for allegations of workplace discrimination at FLPD related to employee promotions. (D.E. 18 at ¶ 64-66). As a result of this retaliatory investigation, CITY terminated Mr. Scirotto from his position as Chief of Police. CITY wrongfully terminated Mr. Scirotto from his employment with FLPD for complying with CITY's demands to increase diversity among FLPD and refusing to partake in CITY's discriminatory and prejudicial promotional practices. *See e.g.* (D.E. 18 at ¶ 71-73, 97). CITY's retaliatory termination of Mr. Scirotto is an act of intentional discrimination in direct violation of Title VI. As such, CITY may not raise the "at-will employee" defense to Mr. Scirotto's breach of contract claim since CITY terminated Mr. Scirotto for reasons prohibited by law.

B. **Defendant is Not Immune from Defamation Claim.**

In Florida, defamation is defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Byrd v. Hustler Magazine, Inc.,* 433 So. 2d 593, 595 (Fla. 4th DCA 1983). *Johnston v. Borders*, 615CV936ORL40DCI, 2018 WL 8244336, at *4 (M.D. Fla. June 19, 2018). Florida Courts have held that public officials are immune from suit for defamation *so long as* their allegedly defamatory statements were made within the scope of their duties. *See del Pino Allen v. Santelises*, 271 So. 3d 1112, 1114 (Fla. 3d DCA 2019) (*quoting Stephens v. Geoghegan,* 702 So. 2d 517, 522 (Fla. 2d DCA 1997) (emphasis added). The controlling factor in deciding whether a public employee enjoys absolute immunity is whether the communication was made within the scope of the employee's duties. *City of Miami v. Wardlow*, 403 So.2d 414 (Fla. 1981). Conduct is within the scope of one's employment if it is the type of conduct which the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or requested by the work to be performed, and the conduct is activated at least in part by a purpose to serve the employer. *Cameron v. Jastremski*, 246 So. 3d 385, 387–88 (Fla. 4th DCA 2018) *citing Alfino v. Dep't of Health & Rehab. Servs.*, 676 So.2d 447, 449 (Fla. 5th DCA 1996). Further, the term "duties" is not confined to those things required of the public official, but rather extends to all matters which the public official is *authorized* to perform. *Gay v. Jupiter Island Compound, LLC*, 48 Fla. L. Weekly D749 (Fla. 4th DCA Apr. 12, 2023) (emphasis added).

In the case at hand, CITY's Auditor, John Herbst ("Mr. Herbst"), a CITY employee at the time, made defamatory and false statements that were outside the scope of his authorized duties. Specifically, Mr. Herbst launched an investigation into Mr. Scirotto's part-time employment as a

National Collegiate Athletic Association ("NCAA") basketball referee. During this unauthorized investigation, Mr. Herbst knowingly made false and defamatory statements publicly, which were also published, whereby Mr. Herbst alleged Mr. Scirotto was violating CITY policy and stealing from CITY by purportedly working NCAA sporting events on the same days he was scheduled to work at FLPD. Mr. Herbst's defamatory statements were published in an audit report directed to CITY's mayor and commissioners styled "Termination of the Forensic Audit of Telestaff Time Keeping System for Larry Scirotto, Chief of Police for Lack of Independence", Memorandum No: 21/22-07, wherein Mr. Herbst states that "the matters raised in the draft report merit review for possible criminal violations by Larry Scirotto. The circumstances are similar in nature to those in which a Fort Lauderdale police sergeant was arrested on fraud and theft charges in January 2022." (D.E. 18 at ¶ 84). In the Forensic Audit Report attached as Exhibit 1 to the Termination of Forensic Audit Report, Memorandum No: 21/22-06, Mr. Herbst states, among other things, that Mr. Scirotto "improperly received payment from the City for regular workdays while simultaneously engaged in outside employment and outside employment travel in violation of Florida Statute, the City's Policies and Standards Manual (PSM), and Police Department Standard Operating Procedures." (D.E. 18 at ¶ 85). Thereafter, CITY terminated Mr. Herbst from his employment as CITY Auditor for acting outside the scope of his directives and authority in investigating Mr. Scirotto's part-time employment as a NCAA basketball referee.

In fact, CITY officials expressly indicated that Mr. Herbst's investigation of Mr. Scirotto was not authorized and not within the scope of his employment. In a City Commission held on February 15, 2022, the Mayor of Fort Lauderdale, Dean J. Trantalis ("Mayor Trantalis"), challenged Mr. Herbst's authority and argued that the scope Mr. Herbst's job duties do *not* include conducting independent investigations, such as the one improperly launched against Mr.

9

Scirotto. Mayor Trantalis described Mr. Herbst's investigation of Mr. Scirotto as "rouge" and "a secret investigation *without the authority of the commission.*" (emphasis added) (D.E. 18 at ¶ 87-88). Mayor Trantalis further states that he believes Mr. Herbst's investigation "is part of an effort to embarrass [Mr. Scirotto] because there are people in the department who are trying to undermine his authority." *Id.* Accordingly, CITY is not immune from Mr. Scirotto's claim for defamation since the defamatory and false statements were made outside the scope of the CITY employee's duties as publicly recognized by CITY officials.

CITY contends it is not liable for Mr. Herbst's defamatory statements because Fla. Stat. § 768.28(9)(a) provides that "[t]he state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment[.]" (D.E. 20 at pg. 6-7). However, the facts at hand do not afford CITY protection under this statute. At the time of the alleged defamation, Mr. Herbst represented that he was acting on CITY's behalf within the scope of his duties as CITY's Auditor. It was only *after* Mr. Herbst completed his report making defamatory statements about Mr. Scirotto that CITY officials deemed Mr. Herbst's actions were outside the scope of his duties. It should be noted that although CITY subsequently claimed Mr. Herbst acted without the authority of the CITY commission, CITY relied on the same Audit Report in its decision to terminate Mr. Scirotto's employment.

    **C.** **<u>Plaintiff Sufficiently Plead Violation of Title VI of Civil Rights Act.</u>**

        *a. Defendant Received Federal Financial Assistance for Primary Purpose of Providing Employment.*

Title VI authorizes a private right of action to enforce Title VI if the employer receives federal financial assistance and the "primary objective" of the Federal financial assistance is to provide employment. 42 U.S.C. § 2000d–3. Thus, in order to bring suit under Title VI, an

employer must receive federal funds for purposes of providing employment. *Russell v. Pub. Health Tr. of Miami-Dade Cnty.*, 08-23442-CIV, 2009 WL 936662, at *6 (S.D. Fla. Apr. 6, 2009) *citing Jones v. Metropolitan Atlanta Rapid Transit Auth.,* 681 F.2d 1376 (11th Cir.1982). A plaintiff alleging a cause of action under Title VI should allege, to the extent possible, when funds were received, what the funds were used for, and whether the primary objective was to provide employment. *Rosario–Olmedo v. Community School Bd. for Dist. 17,* 756 F.Supp. 95, 96 (E.D.N.Y.1991). **However, Court's in this very District have held that merely alleging "upon information and belief" that a defendant receives federal financial assistance for the primary purpose of providing employment is "sufficient to plausibly plead the financial-assistance element of a Title VI claim" and subsequently denied a motion to dismiss on this basis.** *Glover v. Dist. of Trustees of Palm Beach State Coll.,* 9:19-CV-80968, 2020 WL 3118469, at *2 (S.D. Fla. Jan. 23, 2020)(emphasis added).

Importantly, the amount of federal financial assistance received does not affect Title VI coverage. *See, e.g., K.H. v. Vincent Smith Sch.*, CV 06-0319(ERK) (JO), 2006 WL 845385, *11 (E.D.N.Y. Mar. 29, 2006). Also, the financial assistance does *not* have to relate to a program in which the complainant participates or seeks to participate or used for the complainant's benefit. Rather, an agency only has to prove that the entity received federal financial assistance when the alleged discrimination occurred. *See Howe v. Hull*, 874 F. Supp. 779, 789 (N.D. Ohio 1994); *see also Estate of Alcalde v. Deaton Specialty Hosp. Home, Inc.* 133 F. Supp. 2d 702, 708 (D. Md. 2001).

Contrary to Defendant's assertions, Mr. Scirotto's Amended Complaint sufficiently establishes that CITY received Federal financial assistance and the "primary objective" of the Federal financial assistance CITY received is to provide employment. Mr. Scirotto's Amended

Complaint alleges more than conclusory statements devoid of any substance as Mr. Scirotto cites to the exact amounts the CITY received and even cites to the CITY's Adopted Budgets for 2022 and 2023 explicitly stating the amount of federal funding received and that certain of CITY's government funds were budgeted for the primary purpose of creating new positions at FLPD. (D.E. 18 at ¶¶ 120-123). Specifically, Mr. Scirotto expressly alleges that CITY received nearly twenty-million dollars ($20,000,000.00) in 2021 and 2022. (D.E. 18 at ¶¶ 121). In 2022, CITY budgeted $291,820.00 of government funds towards creating new positions at FLPD. (D.E. 18 at ¶¶ 122). Upon information and belief, a portion of the $20,000,000.00 Federal financial assistance received by the CITY between 2021 and 2022 was for the primary objective of providing employment to the CITY. The facts of the Amended Complaint merely need to contain enough factual support to *"plausibly suggest"* the CITY receives federal funding to survive a motion to dismiss. *See Hui Li v. Univ. of Fla. Bd. of Trs.*, No. 1:14-cv-236-RS-GRJ, 2015 U.S. Dist. LEXIS 51523, at *13 (N.D. Fla. Apr. 20, 2015).[2]

Even if this Court agrees that Mr. Scirotto's Amended Complaint does not sufficiently allege Defendant's receipt of financial assistance for the primary objective of providing employment, it would be improper and premature for this Court to grant CITY's Motion to Dismiss at this stage of litigation, especially since discovery has not yet commenced. Discovery will uncover the amount of federal funding applied to provide employment in CITY.

### b. *Plaintiff Engaged in Protected Activity.*

To prevail on a retaliation claim under Title VI, a claimant must show that: (1) the claimant engaged in protected activity of which the recipient was aware; (2) the recipient took a

---

[2] Although the Court in *Hui Li* dismissed the plaintiff's claim under Title VI, the facts of this case are distinguishable as Mr. Scirotto provided authority explicitly citing to CITY's receipt of federal funding and that government funding was used to create new jobs within FLPD. For the same reasons, CITY's reliance on *Mayfield v. Hart Cty. Sch. Dist.*, No. 3:04-CV-09 (CDL), 2006 U.S. Dist. LEXIS 42124, at *25 (M.D. Ga. June 9, 2006) is misguided.

significantly adverse action against the individual; and (3) a causal connection exists between the individual's protected activity and the recipient's adverse action. *See Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1223 (9th Cir. 2012); *Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013).

"The first element [protected activity] is established if the plaintiff can show that he opposed an unlawful employment practice which he reasonably believed had occurred. *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990) *citing Wu v. Thomas,* 863 F.2d 1543, 1549 (11th Cir.1989).[3] For there to be "protected activity," the evidence must show that a person opposed a recipient's actions that the person reasonably and in good faith believed violated Title VI or participated in a matter that reasonably or in good faith alleged a violation. *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1503 (11th Cir. 1990); *Peters*, 327 F.3d at 320-21.

CITY contends that Mr. Scirotto does not allege or cannot establish that he engaged in "protected activity." Notwithstanding, Mr. Scirotto's Amended Complaint sufficiently pleads that Mr. Scirotto engaged in protected activity, to wit: promoting (6) qualified minority FLPD employees, which CITY was aware of as CITY hired Mr. Scirotto with explicit instruction to promote and establish greater diversity within the FLPD. Mr. Scirotto also promoted nine (9) white male employees. (D.E. 18 at Count III). However, FLPD employees, acting as agents of CITY, repeatedly urged Mr. Scirotto to promote the white-male FLPD employees over other qualified employees consisting of different races, ethnicities and genders. *Id.* CITY endorsed the hiring/promoting of white male employees over other diverse, qualified candidates by subsequently disapproving of Mr. Scirotto's decisions to promote diverse candidates. *Id.* Despite

---

[3] Defendant cites *Hargett v. Florida Atl. Univ. Bd. of Trustees*, 9:15-CV-80349-CIV, 2015 WL 13639189, at *2 (S.D. Fla. Dec. 15, 2015) in support of its allegation that Plaintiff must show that he communicated his belief of discrimination to his employer. See Motion to Dismiss at page 5. However, *Hargett* involves a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., not Title VI as alleged here.

assuring Mr. Scirotto that it will support Mr. Scirotto's hiring/promoting of diverse, qualified candidates, CITY terminated Mr. Scirotto's employment for this very same reason. Accordingly, Mr. Scirotto's promotion of six (6) minority FLPD employees constitutes objections to CITY's discriminatory and prejudicial hiring/promotional practices, which Mr. Scirotto reasonably and in good faith believed were in violation of Title VI. See (D.E. 18 at ¶¶ 136-137, 139). Moreover, Mr. Scirotto complained of CITY's discriminatory and prejudicial hiring/promotional practices as evidenced by his objections and express written notations of all factual inaccuracies contained in Mr. Rossman's Investigative Report dated February 25, 2022, which served as a basis for CITY's wrongful termination of Mr. Scirotto's employment with FLPD. *Id. See also* (D.E. 18 at ¶ 68).

As noted above, the Court must accept all well pleaded allegations as true. See *Bell*, 778 So.2d at 1032. At this stage of litigation, Mr. Scirotto's Amended Complaint need only contain enough facts to indicate the presence of the required elements. Based on the foregoing, Mr. Scirotto has demonstrated a facially plausible claim that he engaged in protected activity and CITY violated Title VI, which caused Mr. Scirotto's harm.

V.  **CONCLUSION**

Defendant's Motion to Dismiss must be denied. Based on the foregoing, Mr. Scirotto's Amended Complaint contains sufficient allegations supporting his claims for breach of contract, defamation and violation of Title VI.

WHEREFORE, Plaintiff, LARRY SCIROTTO, respectfully requests entry of an Order denying Defendant, CITY's, Motion to Dismiss, requiring CITY to answer Mr. Scirotto's Amended Complaint, and providing such other and further relief as the Court deems just and proper. Alternatively, Mr. Scirotto seeks leave to amend the Amended Complaint as necessary.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 11, 2023, the foregoing document was electronically filed and served on all counsel of record and identified in the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

**DI PIETRO PARTNERS, PLLC**
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
Primary Email Address:
service@ddpalaw.com
Secondary Email Address:
nicole@ddpalaw.com
Telephone: (954) 712-3070
Facsimile: (954) 337-3824

/s/ *Nicole Martell*
**NICOLE MARTELL, ESQ.**
Florida Bar No.: 100172
nicole@ddpalaw.com

**SERVICE LIST**
Carmen Rodriguez
Law Offices of Carmen Rodriguez, P.A.
15715 S. Dixie Highway, Suite 411
Palmetto Bay, FL 33157-1884
crpa@crlaborlawfirm.com
Tel: (305) 254-6101
Attorney for Defendant